# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LISA KNOLL,** | : | **No. 3:17cv322** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | **(Magistrate Judge Mehalchick)** |
| | : | |
| **NANCY A. BERRYHILL,** | : | |
| **Acting Commissioner of Social** | : | |
| **Security***, | : | |
| **Defendant**[1] | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court for disposition is Magistrate Judge Karoline Mehalchick's report and recommendation (hereinafter "R&R") which proposes denying Plaintiff Lisa Knoll's (hereinafter "plaintiff" or "claimant") appeal of Defendant Social Security Administration's (hereinafter "SSA") decision denying plaintiff's claims brought on behalf of her minor son for Supplemental Security Income under Title XVI of the Social Security Act. (Doc. 22). The matter is fully briefed and ripe for disposition.

## Background

Plaintiff Knoll has a minor child, E.G.K., who suffers from social anxiety,

---

[1] Carolyn Colvin was the Acting Commissioner of Social Security at the time plaintiff filed this case. Thus she was the originally named defendant. Since then, Nancy A. Berryhill has assumed the Acting Commissioner position. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Berryhill is automatically substituted as the named defendant.

attention deficit hyperactivity disorder ("ADHD"), and a learning disability. Plaintiff began her quest for supplemental security income for E.G.K. on August 18, 2013, when she filed a Title XVI application for benefits. Plaintiff Knoll claimed that her son's disability began on May 1, 2006.

On March 25, 2014, the SSA denied plaintiff's claims. Upon learning that her claim was denied, plaintiff requested a hearing before an Administrative Law Judge (hereinafter "ALJ").

At said hearing on June 25, 2015, Judge Randy Riley found that E.G.K., who was thirteen (13) years old at the time and going into the seventh grade, was not disabled under the Social Security Act. Plaintiff appealed this decision to the SSA Appeals Council, and her appeal was denied on January 25, 2017.

Plaintiff initiated the instant action on February 21, 2017, asking the court to reverse the decision of the ALJ and award benefits, or remand for a new hearing. (Doc. 1). Plaintiff seeks this reversal on the grounds that the ALJ's decision to deny her claim was not supported by substantial evidence and is based on the incorrect application of legal principles.

Magistrate Judge Mehalchick reviewed the record in this case and recommends that plaintiff's request for relief be denied and final judgment be issued in favor of the defendant. (Doc. 22). Plaintiff filed objections to the R&R on

March 14, 2018. (Doc. 25). The defendant responded on March 28, 2018, bringing this case to its present posture. (Doc. 27).

## Jurisdiction

The court has federal question jurisdiction over this SSA appeal. <u>See</u> 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); <u>see</u> <u>also</u> 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business....").

## Legal Standard

In disposing of objections to a magistrate judge's R&R, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. S 636(b)(1)(c); <u>see</u> <u>also</u> <u>Sullivan v. Cuyler</u>, 723 F.2d 1077, 1085 (3d Cir. 1983). The court may accept, reject, or modify, in whole

or in part, the findings or recommendations made by the magistrate judge.
Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). The district court judge
may also receive further evidence or recommit the matter to the magistrate judge
with instructions. Id.

In reviewing a Social Security appeal, the court must determine whether
"substantial evidence" supports the ALJ's decision. See 42 U.S.C. § 405(g);
Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v.
Apfel, 186 F.3d 422, 427 (3d Cir. 1999). "[S]ubstantial evidence has been defined
as 'more than a mere scintilla.' " Hagans, 694 F.3d at 292 (quoting Plummer, 186
F.3d at 427). It means "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383
U.S. 607, 620 (1966).

The court should not reverse the Commissioner's findings merely because
evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g);
Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may
not weigh the evidence or substitute their own conclusions for those of the fact-
finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that
when the ALJ's findings of fact are supported by substantial evidence, courts are
bound by those findings, even if they would have decided the factual inquiry
differently). In an adequately developed factual record, substantial evidence may

be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Thus, a reviewing court must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

To receive disability benefits, a claimant under the age of eighteen must demonstrate that he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted for a continuous period of

not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). Notwithstanding the above, no child who engages in substantial gainful activity, as defined by the Social Security regulations, may be found disabled. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.906.

The ALJ evaluates whether a child is eligible for SSI payments by reason of disability with a three-step sequential analysis. This analysis requires the ALJ to consider, in sequence, whether the child (1) is engaging in substantial gainful activity; (2) has a medically determinable, severe impairment; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 416.924.

Applying the three-step sequential analysis to the instant case, the ALJ found at Step 1 that E.G.K. had not engaged in substantial gainful activity since December 5, 2013, the date his application was filed. (ALJ Decision of July 31, 2015, Doc. 7-2 at 16). At Step 2, he found that E.G.K. had the following severe impairments: ADHD, Borderline Intellectual Functioning, and Learning Disorder, Not Otherwise Specified. (Id.)  At Step 3, the ALJ found that E.G.K. did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Listings 112.05 for Borderline

Intellectual Functioning and Learning Disorder and 112.11 for ADHD. (Id. at 17-18).

Next, the ALJ analyzed whether E.G.K.'s impairments were functionally equivalent to the severity of any listed impairment. After reviewing several pieces of evidence, the ALJ concluded that they were not, and determined that E.G.K. was not disabled. (Id. at 29). The ALJ therefore denied E.G.K.'s application for benefits.

The Clerk of Court assigned plaintiff's appeal to Magistrate Judge Karoline Mehalchick for a report and recommendation. Magistrate Judge Mehalchick recommends denying plaintiff's appeal and entering final judgment in favor of the defendant. (Doc. 22). Magistrate Judge Mehalchick determined that the defendant's decision to deny plaintiff's claims for disability and disability insurance benefits is supported by substantial evidence in the record.

Plaintiff objects to Magistrate Judge Mehalchick's R&R, asserting that Magistrate Judge Mehalchick erred in finding that: (1) the ALJ's evaluation at step three is supported by substantial evidence; (2) the ALJ's assessment of the domains of functioning is supported by substantial evidence; and (3) a "Sentence Six" remand is not warranted. The defendant responded to these objections, arguing that plaintiff's objections are a mere recitation of already addressed issues. We will address the objections in turn.

## I.  Whether Step Three of the Analysis is Supported by Substantial Evidence

Plaintiff argues that Magistrate Judge Mehalchick erred in finding that the ALJ's evaluation at step three of the analysis for determining disability is supported by substantial evidence. As we noted above, at step three of the analysis, the ALJ must consider whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. <u>See</u> 20 C.F.R. § 416.924.

Here, the ALJ determined that E.G.K. did not have an impairment, or combination of impairments, that met or medically equaled any listed impairment. The ALJ further determined that E.G.K's impairments were not functionally equivalent to the severity of a listed impairment. In coming to this conclusion, the ALJ considered: the opinion of impartial medical expert, Jeffrey Fremont ("Dr. Fremont"), given at the administrative hearing on June 25, 2015; an assessment by state agency psychological consultant, Peter Garito, Ph.D. ("Dr. Garito") on March 21, 2014; the general opinions of E.G.K.'s treating and examining mental health providers, expressed through Global Assessment of Functioning ("GAF") Scores ranging from 48 to 65; teacher questionnaires completed by Sarah Osbaugh on January 8, 2014 and May 8, 2014; and a teacher questionnaire completed by LaCinda Scheitle on May 26, 2015. (ALJ's Decision of July 31, 2015, Doc. 7-2 at 18-22).

Plaintiff appears to limit the scope of her argument to two key issues within the ALJ's analysis. First, plaintiff argues that Dr. Fremont misinterpreted the requirements of Listing 112.05F by imposing a requirement that in order for an individual to meet this listing, they must first suffer from an organic mental disorder. Thus, plaintiff argues that Dr. Fremont's opinion should not have been given weight by the ALJ. Second, the plaintiff takes issue with the reliance the ALJ, and subsequently Magistrate Judge Mehalchick, placed on E.G.K.'s full scale IQ score of 72. The plaintiff argues that this score also should not have been afforded significant weight because the plaintiff received an IQ score of 62 in processing speed, therefore the lower of the two scores should have been used in evaluating whether E.G.K. met a listed impairment. We will begin by addressing the requirements of Listing 112.05F.

## A. Listing 112.05F

As noted above, plaintiff argues that Dr. Fremont misinterpreted the requirements of Listing 112.05F. Listing 112.05, for intellectual disabilities, is satisfied when the child's mental functioning is "[c]haracterized by significantly sub-average general intellectual functioning with deficits in adaptive functioning," and when the necessary level of severity under subparagraphs A, B, C, D, E, or F of the Listing is met. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05. Under

subparagraph F(2) of Listing 112.05, a child between ages three and eighteen must: (1) by reference to Section 112.02B(2)(a) of the Listings, have a marked impairment in age-appropriate cognitive/communicative function that is documented by medical findings and, if necessary, standardized psychological test results and (2) suffer from a physical or other mental impairment that imposes an "additional and significant limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 112.02B(2)(a), 112.05F.

Plaintiff agrees that to meet Listing 112.05F, an individual must have a "marked impairment in age-appropriate cognitive/communicative functioning." Plaintiff argues, however, that Dr. Fremont went a step further and imposed a requirement that the individual must also suffer from an organic mental disorder. According to the plaintiff, because Dr. Fremont imposed this requirement despite the specific language of the listing, his opinion should not have been afforded substantial weight. In response, the defendant argues that the plaintiff's objection is vague and misleading, and the question of whether E.G.K had a showing of marked impairment in age-appropriate communicative functioning was ultimately answered in the negative by Dr. Fremont. We agree with the defendant.

A review of the record reveals that the applicability of subparagraph F of Listing 112.05 was discussed at length between Dr. Fremont and E.G.K.'s counsel during the administrative hearing on the matter. Although Dr. Fremont

notes that the title of Listing 112.02 is "organic mental disorder," there is no indication that he imposed an additional requirement. Rather, the context of the interaction between Dr. Fremont and E.G.K.'s counsel indicates that Dr. Fremont was clarifying which listing counsel was referring to, as after asking whether he found E.G.K. to have a marked impairment in age appropriate cognitive/communicative function, Dr. Fremont responded: "I did not. My note-taking, and I know you're looking at organic mental disorder here, right? 112.02 is organic mental disorder." (N.T. ALJ Hrg., June 25, 2015, Doc. 7-2 at 38). As noted by Magistrate Judge Mehalchick, counsel asked Dr. Fremont at least twice during this conversation whether, after reviewing the case, he has opined whether E.G.K. has a marked impairment in age appropriate cognitive communicative function. Both times, Dr. Fremont opined that E.G.K. does not have such an impairment. (Id. at 39-41, 43, 44-45). Dr. Fremont explained that he found that E.G.K.'s impairment was the result of his familial environment, as opposed to the result of any permanent dysfunction. (Id. at 42). Because this opinion was consistent with the medical and academic record of E.G.K. and was within Dr. Fremont's area of professional expertise, the ALJ gave this opinion great weight. (ALJ Decision of July 31, 2015, Doc. 7-2 at 16-17). We find that assigning such weight was appropriate, and will overrule the plaintiff's objection.

## B. Full Scale I.Q. Score

Next, the plaintiff contests the IQ score that was used in determining whether E.G.K. has a marked impairment. As noted above, under subparagraph F(2) of Listing 112.05, a child between ages three (3) and eighteen (18) must have a marked impairment in age-appropriate cognitive/communicative function that is documented by medical findings and, if necessary, standardized psychological test results. Although this prong of section 112.05F(2) does not reference an express IQ score requirement, a marked limitation in cognitive functioning may be supported by a valid IQ score of 70 or less. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 112.00C(2)(a), 112.00C(3); 112.00C(4). Here, the ALJ found that E.G.K. had a valid full scale IQ score of 72, with his verbal reasoning abilities in the borderline range, his nonverbal reasoning skills in the average range, and his processing speed in the extremely low range. (ALJ's Decision of July 31, 2015, Doc. 7-2 at 20). Thus, the ALJ concluded that E.G.K.'s IQ score does not reflect a disabling intellectual impairment under Listing 112.05F.

The plaintiff argues, however, that his full scale IQ score of 72 should not constitute substantial evidence because an IQ score of a certain level is not required in order to meet Listing 112.05F. The plaintiff argues that while a marked limitation in cognitive functioning may be supported by an IQ score of 70 or less, that is not the only way to establish a marked level of impairment.

Further, the plaintiff contends that even if the scores are considered, plaintiff has an IQ score of 62 in processing speed, and that score should have been considered in conjunction with Listing 112.05F.

We find the plaintiff's argument unpersuasive, and we agree with the magistrate judge that the ALJ appropriately weighed E.G.K.'s IQ scores. While we acknowledge that no express IQ score requirement exists in the first prong of section 112.05F(2), the law clearly provides that a marked limitation in cognitive functioning may be supported by a valid IQ score of 70 or less. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 112.00C(2)(a), 112.00C(3); 112.00C(4). Plaintiff has provided no authority as to why the court should deviate from this method of analysis, nor has she presented alternative ways to establish a marked level of impairment.

Additionally, we find that E.G.K.'s processing speed score of 62 was only a component score used to calculate E.G.K.'s full scale IQ score of 72, which does not satisfy the relevant listing, as Listing 112.00C(2) specifically advises looking at full scale IQ scores. Once again, plaintiff provides no authority in support of her argument that the ALJ was mandated by the listings to rely on a lower component score when a valid full scale IQ score was available to him.

Thus, on substantial evidence review, we find that the ALJ was entitled to rely on the full scale IQ score present in the record. The magistrate judge did not err in affording substantial weight to the ALJ's analysis.

## II. Whether the ALJ's Assessment of the Domains of Functioning Is Supported by Substantial Evidence

Next, the plaintiff argues that Magistrate Judge Mehalchick erred in finding that the ALJ's assessment of the domains of functioning is supported by substantial evidence. Plaintiff takes issue with the magistrate judge's analysis of E.G.K.'s ability to acquire and use information, plaintiff's ability to attend and complete tasks, and plaintiff's ability to interact and relate with others.

### A. Ability to Acquire and Use Information

Plaintiff contends that Magistrate Judge Mehalchick's conclusion that the record supports a finding that the plaintiff has less than a marked impairment in acquiring and using information was based solely on his individualized education plans (IEPs), which reflected that he was making academic progress in his special education classroom. The mere fact that plaintiff showed some academic progress, plaintiff argues, does not support a finding that he has less than marked impairment in the domain of acquiring and using information.

We find that this is a mischaracterization of Magistrate Judge Mehalchick's report and recommendation. To the contrary, Magistrate Judge Mehalchick noted that the ALJ had considered, in addition to the IEPs for the 2013-2014 and 2014-

14

2015 school years: (1) academic progress after E.G.K. was placed in special education, without any notation that he was held back; (2) the testimony of Dr. Fremont, who opined that E.G.K. had less-than-marked limitations in this domain; and (3) the ALJ's acknowledgement and consideration of another doctor's contrary finding. (R&R, Doc. 22 at 20-22). We agree with the magistrate judge that this is more than a mere scintilla of evidence, and that this evidence, taken as a whole, was reasonable for the ALJ to accept as adequate to support the conclusion that E.G.K. had less than marked impairment in acquiring and using information.

### B. Ability to Attend and Complete Tasks

On E.G.K.'s ability to attend to and complete tasks, Magistrate Judge Mehalchick also found that the ALJ's determination of less than marked impairment was supported by substantial evidence. Plaintiff argues that this finding was based solely on improvement in this area, and argues that improvement "does not automatically equate to a finding that plaintiff's impairments are less than marked." (Pl.'s Br., Doc. 26 at 6).

With regard to this issue, we find that the relevant evidence was thoroughly reviewed by the ALJ and subsequently by Magistrate Judge Mehalchick. As noted by the magistrate judge, in analyzing E.G.K.'s ability to attend to and complete tasks, the ALJ looked at: (1) improvement of E.G.K.'s ADHD symptoms

with medication; (2) relatively benign findings on mental status examination; (3) academic records, including teacher questionnaires, showing that E.G.K.'s behavior, focus, and concentration in the school setting had improved; and (4) evidence from providers and teachers that E.G.K. was able to work on arts and crafts projects, stay busy on his own, finish things he had started, complete homework on time, and complete chores most of the time. (R&R, Doc. 22 at 22-30). We will overrule the plaintiff's objection on this issue.

### C. Ability to Interact and Relate with Others

In plaintiff's last objection related to the domains of functioning analysis, the plaintiff contests the ALJ's conclusion that E.G.K. had less than marked limitations with regard to interacting and relating with others. Plaintiff argues that Magistrate Judge Mehalchick erred in finding that the ALJ's determination was based on substantial evidence. The plaintiff contends that although the ALJ found that instances where E.G.K. acted out were narrowly centered on negative interactions with his mother, and not necessarily dispositive of his functioning in social environments, a more thorough review of the record disputes that finding. Plaintiff claims that E.G.K. has had severe behavior issues both at school and at home, whether or not he is with his mother. We have carefully reviewed the record, and will overrule the plaintiff's objection.

When evaluating a child's ability in this domain, the ALJ must consider how well the child is able to focus and maintain his or her attention, and how well the child begins, carries through, and finishes his or her activities, including the pace at which the child performs activities and the ease in which the child changes between them. 20 C.F.R. § 416.926a(h). Some examples of limitations in this domain include: being overly startled, distracted, or over-reactive to sounds, sights, movements, or touch; being slow to focus on, or failing to complete activities of interest to the child; repeatedly becoming sidetracked from activities or frequently interrupting others; being easily frustrated and giving up on tasks, including those the child is capable of completing; and requiring extra supervision to stay engaged in an activity. 20 C.F.R. § 416.926a(h)(3)(i-v).

Here, in determining that the ALJ's finding was supported by substantial evidence in the record, Magistrate Judge Mehalchick looked at: (1) E.G.K.'s constructive and friendly relationships with peers; (2) his participation in team sports; (3) the relative infrequency of episodes of "acting out" ; (4) the absence of negative behavior by E.G.K. during occupational therapy sessions and when visiting providers; (5) a notation by one of E.G.K.'s teachers, Ms. Osbaugh, that E.G.K. had only a slight problem in this domain; and (6) the congruence of the ALJ's finding with the opinions of Drs. Garito and Fremont. (R&R, Doc. 22 at 25-27). We agree that that the evidence looked at is substantial and tends to favor a

finding of less than marked impairment in this area. We will therefore overrule plaintiff's objection on this issue.

## III. Sentence Six Remand

After the creation of the record, plaintiff submitted more evidence. The ALJ thus did not review this evidence in coming to his conclusion. Plaintiff argues that this new evidence therefore warrants a "Sentence Six remand" to the ALJ. Magistrate Judge Mehalchick reviewed the new evidence, and found that such a remand is unwarranted. Plaintiff objects to the magistrate judge's finding, arguing that the new evidence could have affected the ALJ's determinations regarding the domains of function.

When a claimant proffers evidence that was not previously before the ALJ, the district court may remand the case pursuant to Sentence Six of § 405(g) (also known as a "Sentence Six Remand"):

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and **it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding**; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the

Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C.A. § 405(g) (emphasis added).

Thus, to justify a remand under the requirements of Sentence Six, the claimant must demonstrate that the evidence is new, material, and not previously submitted to the ALJ for good cause. Szubak v. Sec'y of Health and Human Svcs., 745 F.2d 831, 833 (3d Cir. 1983).

Here, the plaintiff timely submitted various records that, due to a clerical error, were not made a part of the official record that was reviewed by the ALJ. Because the records were never looked at by the ALJ, the magistrate judge found that the evidence was new evidence, and that plaintiff had good cause for its original omission from the record. Magistrate Judge Mehalchick concluded, however, that even though this evidence was new, it is not material, as it tends to simply corroborate the ALJ's findings. Because it is not material, a Sentence Six remand is not warranted, according to Magistrate Judge Mehalchick. After careful consideration, we agree.

For new evidence to material, it must be relevant, probative, and correspond to the period of disability for which benefits were denied. Szubak, 745 F.2d at 833. Materiality further requires a "reasonable possibility" that the new evidence would have changed the outcome of the Commissioner's decision.

Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir. 1985) (citing Szubak, 745 F.2d at 833).

Here, plaintiff's new evidence does not provide any indication that the ALJ's findings would have been altered. The evidence offered by the plaintiff includes new medical records and psychiatric records, but these records generally support the ALJ's finding that E.G.K. did not suffer from a marked limitation in the domains of functioning. For example, the medical records indicate that while E.G.K.'s medications would tend to wear off, they were otherwise working well. (Doc. 14-1 at 50). The records also note that E.G.K.'s teachers had reported that his ADHD symptoms were under control, notwithstanding one report which reflected that E.G.K. struggled with assignment completion. (Doc. 14-1 at 31, 33-36; Doc. 14-2 at 6, 25, 37-40, 41-44). We agree with the magistrate judge that this evidence is consistent with the ALJ's finding of a less than marked limitation in the domains of functioning.

Accordingly, in the absence of any specific showing by Plaintiff as to how these records would have impacted the ALJ's reasoning in the functional equivalence portion of his decision, we will overrule plaintiff's objection and affirm Magistrate Judge Mehalchick's denial of a Sentence Six remand.

**Conclusion**

For these reasons, we will adopt Magistrate Judge Mehalchick's R&R and affirm the decision of the ALJ denying plaintiff's request for relief. An appropriate order follows.


**Date: June 28, 2018**                                    **s/ James M. Munley**
                                                           **JUDGE JAMES M. MUNLEY**
                                                           **United States District Judge**